1  Terry W. Bird - State Bar No. 49038
   twb@birdmarella.com
2  Mitchell A. Kamin - State Bar No. 202788
   mak@birdmarella.com
3  Ariel A. Neuman - State Bar No. 241594
   aan@birdmarella.com
4  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
5  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
6  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110

7

8  Attorneys for Defendants Pacific Eurotex
   Corp. and Morad Neman

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12

13  THE UNITED STATES OF
   AMERICA,

14         Plaintiff,

15     vs.

16  PACIFIC EUROTEX CORP.,
   et al.,

17

18         Defendants.

19

20

21

22

23

24

25

26

27

28

CASE NO. 14-CR-00521-JAK

**NOTICE OF MOTION; MOTION
TO SUPPRESS SEARCH
WARRANT EVIDENCE DUE TO
SEARCH EXCEEDING SCOPE OF
THE WARRANT;
DECLARATIONS OF YADYDYA
"SEAN" NEMAN, JEREMY D.
MATZ, PATRICK CONLEY,
MICHAEL G. FREEDMAN AND R.
AMANDA IM,; EXHIBITS IN
SUPPORT THEREOF**

Hearing Date:  January 8, 2015
Time:        8:30 a.m.
Location:    Courtroom of the Hon.
          John A. Kronstadt,
          Roybal Federal Building
          Crtrm 750

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on January 8, 2015 at 8:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable John A. Kronstadt, 255 E. Temple St., Courtroom 750, Los Angeles, California 90012, Defendant Morad Neman will and hereby does move the Court to suppress all items seized from the offices of Neman Real Estate Investments, LLC located at 1433 Griffith Avenue.  The search and seizure of these items violated the moving defendant's rights under the Fourth Amendment of the United States Constitution.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations and exhibits, the separately lodged search warrants and supporting affidavits, the entire Court file in this matter, the arguments of counsel, evidence at any hearing, and any other matter of which the Court may take notice.

DATED:  December 4, 2014

Terry W. Bird
Mitchell A. Kamin
Ariel A. Neuman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:       /s/
Terry W. Bird
Mitchell A. Kamin
Ariel A. Neuman
Attorneys for Defendants Pacific Eurotex
Corp. and Morad Neman

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE WARRANT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND .................................................................. 2

    A.      Pacific Eurotex ............................................................................ 2

    B.      Agents Obtain a Search Warrant ................................................ 3

    C.      The Government Conceals Information About Neman Real
          Estate, A Separate Business Housed at 1433 Griffith Avenue, In
          Applying For The Warrant To Search Pacific Eurotex ..................... 4

    D.      The Government Searches Neman Real Estate Without A Proper
          Warrant ....................................................................................... 6

III.    ARGUMENT ...................................................................................... 8

    A.      ALL EVIDENCE SEIZED FROM NEMAN REAL ESTATE'S
          BUSINESS LOCATION, AND ANY SEIZED EVIDENCE
          WHOSE SOURCE CANNOT BE DEFINITIVELY
          IDENTIFIED, SHOULD BE SUPPRESSED BECAUSE
          AGENTS EXCEEDED THE SCOPE OF THE AUTHORIZED
          SEARCH .................................................................................... 8

        1.      The Scope of the Authorized Search Was Limited To
             Pacific Eurotex ................................................................ 9

        2.      The Agents Knowingly Exceeded the Scope of the
             Authorized Search ........................................................ 11

        3.      The Search of Neman Real Estate Cannot Be Justified
             Under The Warrant To Search Pacific Eurotex ................. 12

        4.      No Good Faith Exception Applies To This Search .............. 14

IV.     CONCLUSION .................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Davis v. United States*,
    131 S. Ct. 2419 (2011) ........................................................ 15

*Groh v. Ramirez*,
    540 U.S. 551 (2004) .......................................................... 14

*Hill v. California*,
    401 U.S. 797 (1971) .......................................................... 13

*Horton v. California*,
    496 U.S. 128 (1990) .......................................................... 14

*Maryland v. Garrison*,
    480 U.S. 79 (1987) ......................................................passim

*United States v. Gonzalez*,
    697 F.2d 155 (6th Cir. 1983) ............................................ 14

*United States v. Hitchcock,*
    286 F.3d 1064 (9th Cir.) ..................................................... 9

*United States v. McClendon,*
    713 F.3d 1211 (9th Cir. 2013) ..................................... 15, 16

*United States v. Mittelman,*
    999 F.2d 440 (9th Cir. 1993) ............................................... 9

*Unites States v. Muse,*
    729 F. Supp. 2d 905 (E.D. Mich. 2010) ....................... 14, 15

*United States v. Rettig,*
    589 F.2d 418 (9th Cir. 1978) ............................................... 9

*United States v. Sears*,
    411 F.3d 1124 (9th Cir. 2005) ......................................... 16

*United States v. Voustianiouk*,
    685 F.3d 206 (2d Cir. 2012) .......................................passim

i

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Fourth Amendment prohibits an agent executing a search warrant for a particular business from searching additional businesses located at the same premises.  U.S. Const. Amend. IV; *Maryland v. Garrison*, 480 U.S. 79 (1987).  Yet that is precisely what the government agents did in this case.

The Government obtained a search warrant for the "business location of Pacific Eurotex, Corp." ("PEC"), a fabric importer/exporter located at 1433 Griffith. 1433 Griffith also houses Neman Real Estate Investments, LLC ("Neman Real Estate" or "NRE"), a company that owns and manages commercial real estate.  PEC and NRE have separate signs pointing to their separate – locked – entrances and completely separate offices.  Agents did not seek or obtain authorization to search NRE's separate offices.

But when agents executed the search warrant for PEC on September 10, 2014, instead of limiting the search to PEC, the agents entered NRE's locked premises and removed scores of documents and computer equipment.  The agents could not have been caught by surprise by the existence of NRE at this address as they knew – or at least had every reason to know – that the building housed NRE as well as PEC.  The Government knew of NRE because its own pre-search investigation revealed documents listing NRE at this address, and it conducted extensive database research that also would have revealed this information.  Moreover, in addition to numerous surveillance operations of the premises, a Government undercover agent had gone through the front door of the building four times, entering through the lobby which clearly leads to the two separate businesses, with signs signaling each business's respective entrance.  Finally, on the day of the search, agents ignored not only the separate doors, facilities, and signs (both in the lobby as well as inside NRE's offices), but also dismissed statements from people on the scene that the NRE

1

offices "were associated with a real estate business and were separate from Pacific Eurotex Corp."  Despite these warnings, agents searched the NRE offices and seized thousands of pages of documents, numerous digital devices and a significant quantity of personal items.

The search warrant application was based entirely upon the alleged activities of PEC and, despite knowledge that the building contained both businesses, the Government said nothing in the search warrant affidavit about NRE.[1]  Instead, the warrant points exclusively to PEC, both in terms of the underlying conduct supposedly justifying probably cause and in naming the business location to be searched.  Yet the agents brazenly and without reservation also searched the premises of NRE, a business neither named in the warrant nor associated with the alleged criminal activity in this case.

The Government agents violated the Fourth Amendment when they dramatically exceeded the scope of the search authorized in the search warrant for PEC.  Accordingly, anything derived from the search of NRE must be suppressed and returned.  Further, the Government already has begun to use evidence illegally seized from NRE in this case and its ongoing investigation.  Thus, all of the seized material, and any evidence derived therefrom, should be suppressed for this blatant violation of the Constitution.

## II.

## FACTUAL BACKGROUND

### A.  Pacific Eurotex

Founded in 2001, Pacific Eurotex is a family-owned business that has grown to become one of the leading importers, exporters, and wholesalers of fabrics in Los

---

[1]      The Government's failure to disclose this information to Magistrate Judge Walsh is addressed in the concurrently filed Motion to Suppress Search Warrant Evidence Due to False Statements and Material Omissions in the Supporting Affidavit.

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE WARRANT

1  Angeles.  PEC has customers worldwide who purchase fabrics primarily to

2  manufacture clothing for leading retailers.  PEC's customers include fabric

3  wholesalers, garment manufacturers, textile distributors, and overseas importers and

4  converters.  In 2013, PEC's sales topped $40 million.

5      Neman Real Estate Investments is a completely separate family-owned real

6  estate investment, development, and management company that was founded in

7  2006.  Morad Neman is NRE's Chief Executive and President and has overseen a

8  wide variety of commercial, residential, and mixed-used projects in downtown Los

9  Angeles.  NRE currently owns and manages over 3 million square feet of real estate

10  and has close to 1,000 tenants.

11  **B.    Agents Obtain a Search Warrant**

12      On September 5, 2014, relying upon Special Agent Michael Browning's

13  affidavit, the Government applied for and received a search warrant for "the

14  business location of Pacific Eurotex, Corp., a warehouse and office business

15  complex, at 1433 Griffith Avenue, Los Angeles, California."[2]  (Pacific Eurotex

16  Warrant, Attachment A.)[3]  PEC was the only business mentioned in the affidavit

17

18  [2]    SA Browning failed to disclose that the Government was relying on a

19  CI who it failed to control or audit, and who it failed to corroborate on the most

important facts.  As described in the concurrently filed Motion to Suppress Search

20  Warrant Evidence Due to False Statements and Material Omissions in the

Supporting Affidavit, his affidavit contains numerous material omissions and false

21  statements in an attempt to obscure the nature of the investigation.  One critical

22  omission concerned the multiple businesses housed at 1433 Griffith Avenue, the

23  location of Pacific Eurotex, a fact of which the Government was well aware.

24  [3]    The defense is informed that the search warrants in this case remain

under seal.  Accordingly, the three relevant search warrants, together with the

25  supporting affidavits, are being lodged under seal concurrently with the filing of the

26  defendants' various motions to suppress evidence seized during the execution of the

search warrants.  (*See* Dkt. Nos. 95 & 96).  The warrants are only being lodged once

27  despite being referenced in each of the various motions.  The three search warrants

28  are referenced as follows: 1) Pacific Eurotex Search Warrant; 2) Wilshire Residence

3

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

submitted in support of the search warrant.  (*See* Browning Aff., generally.)

Specifically, SA Browning's affidavit provides "background of PACIFIC

EUROTEX" (¶ 11), identifies owners and employees of Pacific Eurotex (¶11b-h),

describes surveillance of Pacific Eurotex (¶ 12), identifies bank business checking

accounts for Pacific Eurotex (¶ 13) and avers that "there is probable cause to believe

that PACIFIC EUROTEX" committed the crimes of money laundering and

structuring  (¶ 15).  SA Browning's affidavit does not mention NRE, nor does the

search warrant itself.

**C.     The Government Conceals Information About Neman Real Estate, A**

**Separate Business Housed at 1433 Griffith Avenue, In Applying For The**

**Warrant To Search Pacific Eurotex**

The building at 1433 Griffith Avenue houses more than just PEC.  As

indicated at the main entrance to the premises, Neman Real Estate Investments,

LLC, also has its offices in this building.  (Declaration of Yadyda "Sean" Neman

("Sean Neman Decl."), ¶ 4, Exs. 1 & 3).  NRE is separately incorporated and

operated company, which owns and operates commercial and residential real estate

throughout Southern California.  (*Id.*, ¶ 2).  The NRE offices have a separate, locked

entrance from the main lobby that requires someone from NRE to admit any visitor

using a buzzer clearly marked for NRE.  (*Id.*, ¶ 4, Ex. 3).  A separate door

approximately ten feet away leads to PEC.  (*Id.*, ¶ 4, Ex. 2).  NRE has separate

offices, separate staff, separate keys, and separate business operations from PEC.

(*Id.*, ¶¶ 2, 4-6, Ex. 5).  The Neman Real Estate offices are painted different colors

from PEC, and one of the internal offices has a huge sign reading "Neman Real

Estate Investment LLC."  (*Id.*, ¶ 6, Exs. 5 & 6).  Boxes inside also announce their

contents as being related to NRE.  (*Id.*, ¶ 6, Ex. 7).

---

Search Warrant; and 3) Elm Drive Search Warrant.  All references to the "Browning
Affidavit" or "Browning Aff." refer to the affidavit in support of the Pacific Eurotex
Search Warrant unless otherwise specifically noted.

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

1   The Government failed to disclose to the magistrate that agents knew *before*
2   *applying for a warrant and searching the premises* that NRE's separate offices were
3   located at the same address as PEC.  (*See* concurrently filed Motion to Suppress
4   Search Warrant Evidence Due to False Statements and Material Omissions in the
5   Supporting Affidavit).

6   First, the UCA had to have seen the sign and buzzer for Neman Real Estate
7   when she entered through 1433 Griffith Avenue's front lobby on four different
8   occasions in 2013.  (Declaration of Michael G. Freedman ("Freedman Decl.") ¶ 7;
9   Sean Neman Decl., ¶ 4, Ex. 3).  Second, the agents did extensive research on their
10  subject targets during the course of their investigation and prior to seeking the
11  search warrant.  (Browning Aff. ¶ 11).  Among the items they turned up was a May
12  2014 Los Angeles Times article (four months before the search) about Morad "Ben"
13  Neman's vast real estate holdings and latest investments.  (Freedman Decl., Ex. 1).
14  Given that this is Morad Neman's main business venture, and Morad Neman was
15  one of their main targets, it is impossible to conceive that they did not further
16  research NRE and learn of its location; indeed, a basic internet search of "1433
17  Griffith Avenue" would have revealed that NRE was headquartered at this location.
18  (Declaration of Patrick Conley ("Conley Decl."), ¶ 3, Exs. 1 & 2).  In fact, the most
19  basic public database research on Mr. Neman would have revealed that NRE is
20  housed at this location.  (*Id.*, ¶ 4).  In any event, before SA Browning applied for the
21  search warrant, his team had obtained documents by subpoena identifying NRE as a
22  business housed at 1433 Griffith Avenue.  These documents include bank receipts,
23  account statements and business checks, all clearly showing NRE at this address.
24  (Freedman Decl., Exs. 2, 3, and 4).  Thus, agents knew prior to seeking the search
25  warrant that 1433 Griffith housed two separate businesses – PEC and NRE.

26  Indeed, in a sign that agents knew where they were headed, the warrant
27  sought records related to real estate transactions.  (Pacific Eurotex Warrant,
28  Attachment B, ¶ (o)).  But there was no evidence in the affidavit that PEC was

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

1  engaged in the real estate business or otherwise engaged in real estate investments.

2  Such records would not be relevant to the purported criminal activity described in

3  the affidavit.  There was, in short, no legitimate reason to include this category of

4  items to be seized in a search of just PEC.  Instead, it appears that agents knew they

5  were going to search both PEC and Neman Real Estate even though they did not

6  have authorization to do so.

7  **D.      The Government Searches Neman Real Estate Without A Proper**

8  **          Warrant**

9        The Government executed the search warrant for PEC on September 10,

10  2014.  (Freedman Decl., Ex. 5). The Government searched not only PEC's facilities

11  but also the separate offices of NRE.

12        Even if the Government had not actually known about Neman Real Estate

13  prior to the search, Mr. Neman's nephew – Yadydya "Sean" Neman – was present at

14  the scene during the search and told agents not to search NRE's offices because

15  NRE was a separate business.  (Sean Neman Decl., ¶¶ 6, 7).  Indeed, the agents'

16  report acknowledges that Sean Neman objected to their search of NRE because

17  "these rooms were associated with a real estate business and were separate from

18  Pacific Eurotex Corp."  (Freedman Decl., Ex. 5).[4]  Before the search, Sean Neman

19  asked the agents to see the search warrant and pointed out to them that it listed only

20  PEC, not NRE.  (Sean Neman Decl., ¶ 6).  He pointed out to the agents the NRE

21  sign on the entryway door to NRE's offices, as well as a large NRE sign in the NRE

22  office marked as room M on the agents' map.  (*Id.*, ¶ 6, Exs. 3, 4, 6).  Sean Neman

23  also pointed out to the agents the numerous file boxes in the entryway to NRE

24  (room J), which are clearly labelled with either NRE or the names of various real

25  estate related entities.  (Sean Neman Decl., ¶ 6 and Ex. 7).  Sean Neman told the

26

27  _____

    [4]      The agents had designated the relevant rooms as J, K, L, M, O, P, and

28  Q on their map of the premises.  (Sean Neman Decl., Ex. 4).

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

1    agents that they were not authorized to search NRE.  (*Id.*, ¶¶ 6, 7).

2        This message was echoed by an attorney who arrived during the search and

3    observed agents removing items from both PEC and NRE.  (Declaration of Jeremy

4    D. Matz ("Matz Decl."), ¶ 5).  And, of course, as soon as agents entered the

5    premises they would have seen the multiple signs announcing the different

6    businesses.  (Sean Neman Decl., Exs. 1, 2, 3).  Indeed, the agents' report makes

7    clear that *before* they conducted the search, they knew that NRE's offices belonged

8    to a different business than the business they were authorized to search.  (Freedman

9    Decl., Ex. 5).

10       Yet despite the knowledge and overwhelming indicia that a business not

11   included in the warrant was located at the same addresses as PEC but had entirely

12   separate offices which Magistrate Judge Walsh had not authorized the Government

13   to search, agents searched the NRE offices (in addition to the PEC offices), seizing

14   documents, digital devices, and personal items.[5]  (Freedman Decl., Ex. 5).

15       Since the search, the Government has advised that it intends to use the

16   material seized on September 10, 2014, at 1433 Griffith Avenue, against the

17   defendants should it find any information it deems relevant.  Further, it has sought to

18   forfeit various items of value it seized from Morad Neman's office at NRE.  Finally,

19   it has used information obtained during the search of NRE to conduct further

---

21   [5]   Based on the discovery produced by the Government and correspondence
22   with the assigned AUSA, it is not clear whether the agents segregated all documents
     they seized from Neman Real Estate from those they seized from PEC.  (Declaration
23   of R. Amanda Im ("Im Decl."), ¶ 8).  Thus, it has been difficult for counsel to
     determine precisely which documents came from which business given how they
24   were produced by the Government.  (*Id.*) The attached declaration of Amanda Im
25   describes a paralegal's review of the Government production and site diagram, and
     includes an index of the documents and hardware that appear to have been seized
26   from Neman Real Estate. (*Id.*, ¶¶ 2-10, Ex. 2).  The declaration also identifies a
27   number of documents and hardware for which it has not been possible to determine
     the business from which it was seized.  (*Id.*, ¶¶ 8-10, Ex. 2).
28

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

1 investigation of the defendants, including conducting follow-up interviews with
2 NRE employees during which it relied on information it illegally seized from NRE's
3 business location.

### III.

### ARGUMENT

**A.    ALL EVIDENCE SEIZED FROM NEMAN REAL ESTATE'S
        BUSINESS LOCATION, AND ANY SEIZED EVIDENCE WHOSE
        SOURCE CANNOT BE DEFINITIVELY IDENTIFIED, SHOULD BE
        SUPPRESSED BECAUSE AGENTS EXCEEDED THE SCOPE OF
        THE AUTHORIZED SEARCH**

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized."  The manifest purpose of this particularity requirement is to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.  Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."

*Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) (*quoting United States v. Ross*, 456 U.S. 798, 824 (1982)).

Government agents knowingly and intentionally exceeded the scope of the

8

search warrant in this case when they searched and seized items from Neman Real Estate.  The search warrant specifically limited the authorized search to PEC's business location: "The premises to be searched, is the business location of PACIFIC EUROTEX CORP"  (*See* Pacific Eurotex Warrant, Attachment A).  Despite this unambiguous directive, and despite knowing in advance and being advised during the course of the search that some of the offices at 1433 Griffith Avenue "were associated with [Neman Real Estate] and were separate from Pacific Eurotex Corp.,"  (Freedman Decl., Ex. 5), agents searched and seized documents and digital devices from Neman Real Estate's offices.  In doing so, they knowingly exceeded the scope of their authorized search and violated the Fourth Amendment.  *United States v. Mittelman,* 999 F.2d 440, 445 (9th Cir. 1993).  The evidence seized from Neman Real Estate, and any fruits derived therefrom, should be suppressed.

### 1.   The Scope of the Authorized Search Was Limited To Pacific Eurotex

To determine "[w]hether a search exceeds the scope of a search warrant," the court conducts "an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *United States v. Hitchcock,* 286 F.3d 1064, 1071 (9th Cir.), *amended by* 298 F.3d 1021 (9th Cir. 2002); *see also United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012) ("In determining the permissible scope of a search that has been authorized by a search warrant . . . we must look to the place that the magistrate judge who issued the warrant intended to be searched, not to the place that the police intended to search when they applied for the warrant."); *United States v. Rettig,* 589 F.2d 418, 423 (9th Cir. 1978) ("In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution.").

Here, the warrant attachment expressly limits the premises to be searched to "the business location of PACIFIC EUROTEX CORP" (*See* Pacific Eurotex

9

1   Warrant, Attachment A), also described as "the business premises of PACIFIC

2   EUROTEX CORP. (Browning Aff. ¶ 3).[6]  PEC was the entity under investigation

3   and the only business mentioned in the affidavit submitted in support of the search

4   warrant.  *See* Browning Aff., generally.  Accordingly, SA Browning's affidavit

5   provides "background of PACIFIC EUROTEX" (¶ 11), identifies owners and

6   employees of Pacific Eurotex (¶11b-h), describes surveillance of Pacific Eurotex (¶

7   12), identifies bank business checking accounts for Pacific Eurotex (¶ 13), and avers

8   that "there is probable cause to believe that PACIFIC EUROTEX" committed

9   various crimes.  (¶ 15)

10          By contrast, there was no mention in the affidavit of Neman Real Estate.  The

11  Government told the issuing magistrate nothing about NRE's existence, location, or

12  any alleged connection to the investigation.  (*See* Browning Aff., generally).  NRE

13  is not mentioned in the Browning affidavit, which centers exclusively on the alleged

14  business activities of PEC.  (*See* Browning Aff.).  The search warrant itself, and its

15  Attachment A, says nothing about authorizing a search of NRE's offices.  (*See*

16  Warrant, generally).  Thus it was very clear from the "circumstances surrounding

17  the issuance of the warrant [and] the contents of the search warrant" that the scope

18  of the authorized search was PEC's business location.  Indeed, the warrant covered

19  no business at 1433 Griffith Ave other than PEC.  *See Voustianiouk*, 685 F.3d at 211

20  (suppressing evidence seized from second floor apartment because "we have no

21  reason to believe the magistrate judge who signed the warrant at issue intended for

22  the scope of the search to cover any apartment in the building other than the one on

23  _____

24          [6]    Although the face of the warrant states that it is "In the Matter of the Search
    of 1433 Griffith Avenue, Los Angeles, California, 90021," it goes on to state that
25  the Government has requested "the search of the following person or property in the
    Central District of California: See Attachment A." . . . "I find that the affidavit(s) . . .
26  establish probable cause to search and seize the . . . property."  (*See* Pacific Eurotex
    Warrant.)  Attachment A describes the property to be searched as  "the business
27  location of PACIFIC EUROTEX CORP."

28

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

1    the first floor.")

2    **2.    <u>The Agents Knowingly Exceeded the Scope of the Authorized</u>
3    <u>Search</u>**

4         Given the limited scope of the warrant, if officers knew or should have known

5    that 1433 Griffith Ave contained multiple businesses' premises, "they would have

6    been obligated to limit their search" to PEC. *Garrison*, 480 U.S. at 86.  This is true

7    even if there was an "error in the warrant" that somehow authorized a search of the

8    entire premises (although that is not the case here). *Id*. at 86-87.  Moreover, even if

9    they did not know in advance, "they were required to discontinue the search of

10   [Neman Real Estate] as soon as they discovered that there were two separate"

11   businesses at 1433 Griffith Ave.  *Id.* at 87.

12        Here, there can be no question that agents knew or should have known in

13   advance that they were searching a business that they had no authority to enter or

14   search.  Most significantly, the Government sent the undercover agent to 1433

15   Griffith Avenue four times in the Summer of 2013.  (Browning Aff. ¶ 19).  On each

16   occasion, the undercover entered through the main lobby, where she would have

17   seen the following: on the left, a sign showing the entrance to PEC with a locked

18   door.  (Sean Neman Decl., Ex. 2).  On the right, a sign showing the entrance to

19   Neman Real Estate with a locked door and a buzzer.  (*Id.*, Ex. 3).

20        Further, well before seeking the search warrant, agents had subpoenaed and

21   received financial documents showing that Neman Real Estate was housed at 1433

22   Griffith Avenue.  (Freedman Decl., Exs. 2, 3, and 4).  The agents had also conducted

23   significant research as part of their investigation, including reviewing "information

24   gathered from the Secretary of State of California, open source database and internet

25   research," and more.[7]   (Browning Aff. ¶ 11.)  The California Secretary of State's

26   _____

27   [7]    Among the items they turned up was a May 2014 Los Angeles Times article
28   (four months before the search) about Morad "Ben" Neman's vast real estate

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT

website lists Neman Real Estate at this address.  (Conley Decl., ¶ 5, Ex. 3).
Moreover, a basic internet search of "1433 Griffith Avenue" would have revealed
that Neman Real Estate was at this location. (*Id.*, ¶¶ 3, 4).  Basic background
research on Morad Neman would have revealed the same (Conley Decl., ¶ 4).

And even if SA Browning and his agents had not known in advance about the
two businesses (which they clearly did), on the day of the search, agents entering the
premises would have seen the same signs as the undercover, announcing separate
entrances for PEC and NRE, as they entered through the front door of the building.
(Sean Neman Decl., Exs. 1, 2, 3). Moreover, the agents entered Neman Real Estate's
offices through a locked door for which they had obtained the key and, upon
entering, they also would have seen it was entirely separate space from PEC, as
indicated by the separate hallways, doors, offices, paint colors and the Neman Real
Estate signs and boxes in the internal offices.  (*Id.*, ¶¶ 4, 6, 7, 8, Exs. 5, 6, 7, 8).
Even if they claim they somehow missed these obvious indicia, an NRE associate
and attorney both objected to the agents' search of NRE's offices on the scene at the
time of the search because those particular "rooms were associated with a real estate
business and were separate from Pacific Eurotex Corp."  (Freedman Decl., Ex. 5;
*see also* Sean Neman Decl., ¶¶ 6, 7; Matz Decl., ¶ 5).

There is no dispute that despite all of this, and despite the limited search
authorized by Magistrate Judge Walsh, agents nonetheless searched Neman Real
Estate's offices and seized thousands of documents and numerous digital devices
and personal items from those locations.  (Im Decl., ¶¶ 7-10 and Ex. 2).

### 3.   **The Search of Neman Real Estate Cannot Be Justified Under The Warrant To Search Pacific Eurotex**

The Government cannot credibly claim that the search warrant authorized its
agents to search the entire premises of 1433 Griffith Avenue, including the separate

holdings and latest investments. (Freedman Decl, Ex. 1).

NRE offices.  Courts "must judge the constitutionality of [agent's] conduct in light of the information available to them at the time they acted."  *Garrison*, 480 U.S. at 85.  The validity of a search where a warrant arguably encompasses multiple units in a single building "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable."  *Id*. at 88.

In *Garrison*, the Supreme Court held that the search of two apartments on a building's third floor did not violate the Fourth Amendment because the warrant authorized the search of "the premises known as 2036 Park Avenue third floor apartment," there was no dispute that agents actually believed the second apartment was part of a single third floor apartment, and the agents had no reason to think otherwise.  480 U.S. at 80, 85 ("Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant.")  But here, on its face, the warrant was limited to PEC's business location.  Moreover, as explained above, the agents knew or should have known that NRE was a separate business housed at this same address *at the time they sought the warrant*, and there is no dispute that they knew before and while executing the warrant.  Thus, there was more than a "sufficient probability" that they were searching a business location for which they had no authorization; there was certainty.  *Hill v. California*, 401 U.S. 797, 804 (1971) ("sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment").

Even if they did not know in advance, once they saw the signs and were warned by two separate people, including counsel, not to search NRE, agents should have immediately limited the search to PEC and, if they wanted to search the real estate business, obtained a separate warrant.  "The evidence wasn't going anywhere . . . But the officials took a shortcut," and in doing so, violated the Fourth Amendment.  *Voustianiouk*, 685 F.3d at 208 (where agents obtained warrant for

13

first-floor apartment and searched second, agents violated Fourth Amendment and evidence was suppressed); *Garrison*, 480 U.S. at 87 (officers obligated to discontinue search of second apartment as soon as they discovered there were two separate units on the third floor and so were put on notice of risk that there might be unit erroneously included within the terms of the warrant).

The mere proximity of NRE to PEC cannot justify the conduct in this case, as "the Fourth Amendment does not permit the police to search one apartment simply because they have a warrant to search another that is nearby." *Voustianiouk*, 685 F.3d at 208. Particularly where the NRE offices were clearly marked with signs and separated by locked doors, the agents had absolutely no justification for searching this separate business pursuant to a warrant that applied only to PEC. *See United States v. Muse*, 729 F. Supp. 2d 905, 912 (E.D. Mich. 2010) (search of additional business suite exceeded scope of warrant where entry to the additional suite was restricted, "[t]he signage was distinct[, and the] name on the door identified a business that was not the focus of the investigation or even mentioned in the search warrant affidavit"); *United States v. Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983) ("[i]t is settled that where . . . a structure is divided into more than one unit, probable cause must exist for each unit.") (citation omitted).

Because the scope of the search exceeded that permitted by the warrant, all evidence seized from Neman Real Estate should be suppressed. *Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of a search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.")

### 4.   No Good Faith Exception Applies To This Search

There can be no "good faith" exception to the exclusionary rule under these circumstances. While courts "allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing

search warrants," *Garrison*, 480 U.S. at 87, the Supreme Court has explicitly rejected the need for such deference when, as was the case here, no "sort of exigency existed when [an official] drafted the affidavit, the warrant application, and the warrant, or when he conducted the search," *Groh v. Ramirez*, 540 U.S. 551, 565 n.9 (2004).  As in *Voustianiouk*, "[t]hese officers had ample opportunity to . . . obtain a new warrant."  685 F.3d at 216.  Indeed, "unreasonableness results when an officer flagrantly disregards the limitations of a warrant by exceeding the scope of the warrant in the places searched.  It is difficult to find good faith in a flagrant disregard of a search warrant's limitations."  *Muse*, 729 F. Supp. 2d at 913 (citing and quoting *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007)) (internal punctuation and citations omitted).

The agents' conduct was improper on multiple levels, and throughout the warrant application and search process.  First, they failed to inform the magistrate that 1433 Griffith Avenue housed multiple business, though they knew or should have known of this fact.  Second, after obtaining a warrant limited to the business location of PEC, they nonetheless knowingly searched the business location of another entity.  Third, they willfully ignored the warnings of individuals on the scene and clear signage at the location, and continued to search the business location of Neman Real Estate.

In sum, the agents could not have reasonably relied upon the warrant in their possession because the warrant on its face was limited to PEC and did not include NRE or any other business.  "Nothing in the warrant or accompanying affidavit provided any reason for these officers to conclude that the magistrate judge had authorized them to search" offices in the building other than PEC.  *Voustianiouk*, 685 F.3d at 215.  Under these circumstances, suppression is necessary to "to deter police misconduct" and to "compel respect for the constitutional guaranty" of the Fourth Amendment.  *Davis v. United States*, 131 S. Ct. 2419, 2426, 2432 (2011) (quoting, in part, *Elkins v. United States,* 364 U.S. 206, 217 (1960)).  Further,

1    searches and seizures that offend the Fourth Amendment are unlawful and evidence

2    obtained as a direct or indirect result of such invasions is considered "fruit of the

3    poisonous tree" and is inadmissible under the exclusionary rule. *United States v.*

4    *McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) (citing *Wong Sun v. United States*,

5    371 U.S. 471, 484–87 (1963)).

**IV.**

**CONCLUSION**

8        For the foregoing reasons, Morad Neman respectfully requests that the Court

9    suppress the following evidence:

10        a.      Everything seized from Neman Real Estate (*See* Im Declaration, Ex. 2).

11        b.      Unsegregated (i.e., unknown) evidence:  To the extent that the

12    Government has not segregated evidence seized from PEC from evidence seized

13    from NRE, all of the evidence seized that day should be suppressed because the

14    agents transformed the warrant into an impermissible "general warrant."  *United*

15    *States v. Sears*, 411 F.3d 1124, 1131 (9th Cir. 2005) ("When officers violate the

16    terms of a warrant in execution, partial suppression is the norm unless the officers

17    engaged in a general search.").  (*See* Im Declaration, Ex. 2).

18        c.      Fruit of the poisonous tree:  Searches and seizures that offend the

19    Fourth Amendment are unlawful and evidence obtained as a direct or indirect result

20    of such invasions is considered "fruit of the poisonous tree" and is inadmissible

21    under the exclusionary rule. *McClendon*, 713 F.3d at 1215 (citing *Wong Sun*, 371

22    U.S. at 484–87).  Accordingly, the Court should suppress all evidence derived

23    directly or indirectly from the Government's unlawful seizure of documents, digital

24    devices, personal items and any other evidence from NRE.

25    / / /

26    / / /

27    / / /

28    / / /

16

1
2  DATED:  December 4, 2014          Respectfully submitted,

3                                   Terry W. Bird
4                                   Mitchell A. Kamin
                                    Ariel A. Neuman
5                                   Bird, Marella, Boxer, Wolpert, Nessim,
6                                   Drooks, Lincenberg & Rhow, P.C.

7

8                                   By:  _____/s/_____
9                                        Terry W. Bird
10                                       Mitchell A. Kamin
                                         Ariel A. Neuman
11                                       Attorneys for Defendants Pacific Eurotex
12                                       Corp. and Morad Neman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE DUE TO SEARCH EXCEEDING SCOPE OF THE
WARRANT