Terry W. Bird - State Bar No. 49038
 twb@birdmarella.com
Mitchell A. Kamin - State Bar No. 202788
 mak@birdmarella.com
Ariel A. Neuman - State Bar No. 241594
 aan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants Pacific Eurotex
Corp. and Morad Neman

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>vs.<br><br>PACIFIC EUROTEX CORP., ET AL.<br><br>         Defendants. | CASE NO. 14-CR-00521-JAK<br><br>**DEFENDANTS PACIFIC EUROTEX CORP. AND MORAD NEMAN'S MOTION TO UNSEAL SEARCH WARRANTS**<br><br>Date:   March 19, 2015<br>Time:   8:30 a.m.<br>Crtrm.: 750<br><br>Assigned to Hon. John A. Kronstadt |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendants Pacific Eurotex, Corp. ("Pacific Eurotex") and Morad Neman ("Defendants") hereby move for an Order to unseal the search warrants previously sealed in this case on the ground there is no longer any legitimate basis for their sealing and their sealing contravenes public policy and law. *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990); *Press-Enter. Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1, 13-14 (1986).

This motion is based on the instant notice, the attached memorandum of points and authorities, the declaration of Ariel A. Neuman filed concurrently herewith including exhibits separately lodged under seal, the files and records in this case, and any evidence and arguments that may be presented at a hearing on this matter.

DATED: February 26, 2015

Terry W. Bird
Mitchell A. Kamin
Ariel A. Neuman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:  /s/
Terry W. Bird
Mitchell A. Kamin
Ariel A. Neuman
Attorneys for Defendants Pacific Eurotex Corp. and Morad Neman

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Prior to the return of the Indictment in this case, the Government sought and obtained three federal search warrants relevant to this matter in Case No. M 14-01771-PJW. It filed all three warrants under seal. The application to seal the search warrants (the "Application") premised the sealing of the search warrants and underlying affidavits (together, the "Warrants") on two factors that are no longer applicable. That is, the Government moved to seal the Warrants to protect the integrity of the yet-to-be-completed searches, and to protect the on-going investigation. The searches have now been completed and the investigation described in the Warrants has been the subject of public indictments and massive media attention driven by Government disclosures. Nonetheless, the Government refuses to seek to unseal the Warrants and demands that defense counsel share only a heavily redacted version of the Warrants with the Defendants and others.

The Government's refusal to allow Defendants access to a fully-unredacted version of the Warrants severely handicaps the Defendants' ability to assist in the preparation of their own defense. The Warrants contain critical information about which counsel must consult with the Defendants, including a) the names of the alleged "peso brokers" who purportedly directed the confidential informant's ("CI") activities in this case, and related information regarding the "brokers" and the CI's alleged interactions; and b) information regarding the source of the money that the undercover agent apparently delivered to defendant Pacific Eurotex Corp., which the Government alleges was proceeds of narcotics trafficking. The Government's refusal to unseal the Warrants prevents counsel from sharing this information with the Defendants and exploring possible defenses to the Government's charges. Counsel also cannot share this information with other witnesses who might be able

to assist in the preparation of a defense.[1]

Further, the continued sealing of the Warrants is contrary to public policy. Now that the bases for sealing have lapsed, the general practice of publicly filing court documents should be followed. There remains no compelling reason for the continued sealing of the Warrants, and the Government's continued refusal to move to unseal the documents was never contemplated at the time of its Application. The Warrants should be made publicly available at this stage of the proceedings.

## II.

## FACTUAL BACKGROUND

On September 5, 2014, the Government sought and obtained an under seal search warrant for the business location of Pacific Eurotex, Corp., in Case No. M-14-01771. The Government filed a concurrent Application for Order Sealing Search Warrant and Supporting Affidavit.[2] Declaration of Ariel A. Neuman ("Neuman Decl."), Exhibit 1. The Government provided two rationales for sealing the Warrant: 1) "The likelihood of discovering the items sought in the search warrant may be jeopardized if the affidavit in support of the search warrant in this case were made publicly available before the warrant is executed;" and 2) "The affidavit in support of the search warrants describes ongoing investigations that may be compromised if the affidavit were to be disclosed." Neuman Decl., Exhibit 1, Declaration of Julie Shemitz, ¶¶ 2-3. The Government's Application stated that it intended to maintain the documents under seal "until further order of the Court, *or*

---

[1] This information is available in other documents produced in discovery, but all of those documents were produced pursuant to the Court's Protective Order. Accordingly, to the extent the documents may reveal the identity of the CI, neither the documents, nor the information contained therein, can be shared with the Defendants or others.

[2] Because the Application and resulting Order remain under seal, those documents are being separately lodged with the Court under seal, as is the redacted copy of the affidavit provided to the defense.

1 until the government determines that these materials are subject to its discovery
2 obligations in connection with criminal proceedings, at which time they may be
3 produced to defense counsel." Exhibit 1 at 1 (emphasis added). Finding good cause
4 based on these representations, Magistrate Judge Walsh ordered the warrant sealed
5 "until further order of the Court." Neuman Decl., Exhibit 2.

6       On September 10, 2014, the Government executed the search warrant at
7 Pacific Eurotex at about the same time that it executed approximately 70 search
8 warrants throughout the Los Angeles Garment District. The Government trumpeted
9 its investigation and the resulting three indictments (including the indictment in this
10 case) in a press release (Neuman Decl., Exhibit 3) and at a news conference
11 involving the California Attorney General, the Chief of the Criminal Division of the
12 United States Attorney's Office, and other law enforcement officials. (*Id.*, Exhibits 4
13 & 5). The Government's press material contained detailed descriptions of the
14 investigation, the alleged "Black Market Peso Exchange" scheme, and the
15 individuals targeted by the Government on both sides of the US-Mexico border. On
16 the same day, the Indictment in this case was unsealed, and the names of the alleged
17 Mexican customers who used the purported "exchange" at issue in this case were
18 publicly revealed. That same day, the Government revealed the names of the
19 business and individuals who were charged and purportedly knowingly received
20 money from the "exchange" (i.e., the Defendants).[3] Thus, by the end of the day on
21 September 10, 2014, the full scope of the investigation was publicly revealed, as
22 were the names of numerous individuals on both sides of the border allegedly
23 involved in the scheme.

---

[3] Later that night, the Government obtained two additional under seal search warrants for the residences of Morad Neman and Hersel Neman, under the same case number. To date, the Government has not produced additional applications or orders regarding the sealing of those documents despite multiple requests. Thus, the defense assumes that the bases offered for sealing those residential search warrants were the same as the basis offered for sealing the Pacific Eurotex search warrant.

1   Since the unsealing of the Indictment, there has been significant litigation that
2   was publicly filed and identified the fact that the Government used a CI in this case.
3   *See*, *e.g.* Defendants Pacific Eurotex, Corp. and Morad Neman's Motion to Suppress
4   Search Warrant Evidence Due to False Statements and Material Omission in the
5   Supporting Affidavit (Dkt. No. 101); Defendants Morad Neman and Hersel
6   Neman's Joint Motion to Suppress Search Warrant Evidence Seized from
7   Residences of Morad Neman and Hersel Neman (Dkt. No. 104); Government's
8   Omnibus Opposition to Defendants' Motions to Suppress Search Warrant Evidence
9   (Dkt. No. 121); Reporter's Transcript of Proceedings, January 8, 2015. The public
10  filings spell out the Government's allegation that the CI acted as a money
11  "consolidator" and courier for two specific "peso brokers," received direction to
12  deliver money on behalf of two specific, named Mexican garment customers
13  ("Abraham Dichy" and "Mayer"), and gave the money to an undercover agent to
14  deliver to Pacific Eurotex. *Id.*

15  In the course of discovery, the Government produced a heavily redacted
16  version of the Warrants.[4] Neuman Decl., Exhibit 6. After further requests from
17  defense counsel, the Government produced unredacted copies of the Warrants, but
18  expressly designated the unredacted copies as subject to the Court's Protective
19  Order, meaning they could not be shared with the Defendants or others.

20  The redacted version of the Warrants removes all identifying information
21  regarding the alleged "peso brokers" who purportedly ran the entire scheme in
22  which Defendants are alleged to have engaged and who allegedly directed the CI's
23  money laundering activities. *See id.* at PEC_045410-11. It also removes all

---

[4] It is unclear whether the Government ever obtained permission to produce the under seal documents. Magistrate Judge Walsh's Order appears to require that the Government return to the Court to obtain permission to disclose the under seal Warrants, even in discovery. Had the Government sought such permission, it is likely that Magistrate Judge Walsh would have unsealed the Warrants to allow production.

identifying information regarding the alleged sources of the money which was purportedly used to pay Pacific Eurotex and which the Defendants allegedly knew was proceeds of criminal activity. *See id.* at PEC_045412-15.

Despite multiple requests, the Government has refused to move to unseal Warrants. Most recently, the Government stated that it would "consider" unsealing the Warrants "in conjunction with disclosure of the CI's identity." It is defense counsel's understanding that the Government intends to disclose the CI's identity only in the days prior to trial.[5]

### III.
### ARGUMENT

**A.     There is No Factual Basis to Support Continued Sealing of the Warrants**

The Government's first rationale for sealing the Warrants – to protect the integrity of the searches – no longer applies given that the Warrants have now been executed.

The Government's second rationale – the desire not to "compromise" the investigation described in the Warrant – also no longer applies. There are *no* other investigations described in the Warrant beyond that underlying this case. *See* Neuman Decl., Exhibit 6. Moreover, the Government has trumpeted this investigation and this case to the world media and in public court filings, such that any contention that this investigation remains confidential is absurd. It is impossible to believe that anyone even remotely connected to this alleged scheme does not know about the Government's investigation. The alleged "exchange" has been described in detail and at length, including in a press release, at a news conference, in media articles around the world, and in public filings. The Mexican garment customers who purportedly used the "exchange" and who relied on the CI in this case have been publicly identified. The American businesses and business owners

---

[5]  The timing of this disclosure is the subject of a separate discovery motion.

1  who allegedly accepted money from the "exchange" and the CI in this case have
2  been publicly identified. The fact that the alleged courier for the "peso brokers"
3  acted as a CI for the Government has been publicly disclosed. Thus, any other
4  individuals who might be involved in the scheme alleged in the Warrants are surely
5  aware of the Government's investigation. Moreover, the "peso brokers" are surely
6  aware that their formerly trusted courier is now a Government informant. And if
7  they have not been paying attention to date, the unsealing of the Warrants is not
8  going to suddenly tip them off.

9       There is thus no basis to believe that the continued sealing of the Warrants is
10 appropriate. The investigation in this case is public knowledge. The CI's identity is
11 known to those who allegedly directed his activity. He is, in law enforcement
12 parlance, "burned" and no longer a viable investigative tool. The "peso brokers"
13 know they have been identified by the Government. Thus, there is no information in
14 the Warrants that is secret to those actually involved in the alleged scheme. It is
15 only the Defendants who are being kept in the dark.

16      Indeed, the continued sealing of the Warrants only serves to hinder the
17 Defendants' ability to investigate and prepare this case for trial. It is axiomatic that
18 a defendant should be able to assist his counsel to prepare his defense, but here
19 counsel is prevented from discussing with Defendants even the names of the alleged
20 masterminds of this entire scheme (i.e., the "peso brokers"). Given this restriction,
21 as well as the restrictions on counsel's ability to discuss information regarding the
22 alleged sources of the money which was purportedly used to pay Pacific Eurotex,
23 Defendants are prevented from assisting counsel to investigate the most critical facts
24 of this case – facts that go to the heart of Defendants' knowledge and intent.

25      Further, counsel is prevented from conducting its own investigation by the
26 continued sealing of the Warrants. For instance, counsel cannot show the
27 unredacted copy to the Mexican customers and discuss their interactions – if any –
28 with the identified "peso brokers." Such a conversation might be critical to

understanding whether there may be a non-criminal explanation for the alleged conduct. It could also be critical to gaining an independent understanding of the flow of money which could be used to counter or challenge the Government's allegations.

There is no good reason for these restrictions. Indeed, neither the Government's Application nor Magistrate Judge Walsh's sealing Order contemplated that the Warrants would remain sealed indefinitely. Given that the rationales for sealing have passed and trial is quickly approaching, the Court should immediately unseal the Warrants and allow Defendants and their counsel unfettered access to and use of the documents. The continued sealing of the Warrants unfairly and unconstitutionally hampers the Defendants' ability to prepare their defense.

**B.     Continued Sealing of the Warrants is Contrary to Law and Public Policy**

The continued sealing of the Warrants also is contrary to law and public policy. The Supreme Court "has made clear that criminal proceedings and documents may be closed to the public without violating the First Amendment <u>only</u> if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990) (emphasis added); *Press-Enter. Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1, 13-14 (1986).

The First Amendment recognizes "a general right to inspect and copy public records and documents, including judicial documents and records." *Phoenix Newspapers v. United States Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998) (*quoting Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978)). In addition to a constitutional right of access, "there is a strong presumption in favor of the common law right to inspect and copy judicial records." *Phoenix Newspapers*, 156 F.3d at

946.

While there is no question that pre-search and pre-indictment search warrants may be properly sealed, to sustain that sealing or the continued closure of the documents in the face of an application to unseal, there must be a specific finding "that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984).

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* at 508.

Further, to the extent that sealing of a document or proceeding may once have been appropriate, it becomes much less so once an issue related to the document or proceeding is properly raised before the court. For instance, in the case of a search warrant, once a motion to suppress related to the warrant is filed and litigated, the justification for sealing generally gives way to the public's right of access. *United States v. Inzunza*, 303 F. Supp. 2d 1041, 1048-49 (S.D. Cal. 2004).

In this case, as discussed above, there is no compelling reason for the continued sealing of the Warrants. The investigation described in the Warrants is known to any remaining members of the purported conspiracy through the Government's own media blasts and public filings. The justifications for sealing have lapsed, and numerous suppression motions have been litigated. Incredibly, although the Court has adjudicated those motions, neither Defendants nor the public may examine the underlying documents which were the subject of the litigation.

Public policy and the long tradition of openness in our court system dictate that the Warrants should be unsealed.

## IV.
## CONCLUSION

The continued sealing of the Warrants at this stage of the proceedings cannot be justified. The Government seeks to hinder the Defendants' ability to prepare for trial and assist counsel by restricting their access to critical information. The Government's insistence on continued sealing is contrary to public policy and the justice system's core values. It undermines confidence in the Courts and in the criminal justice process. There is no longer a "compelling interest" to justify closure of the documents, nor is there "a substantial probability" that any legitimate interest would be harmed by unsealing. Accordingly, the Court should order the Warrants unsealed forthwith.

DATED: February 26, 2015    Respectfully submitted,

Terry W. Bird
Mitchell A. Kamin
Ariel A. Neuman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:   /s/
      Terry W. Bird
      Mitchell A. Kamin
      Ariel A. Neuman
      Attorneys for Defendants Pacific Eurotex
      Corp. and Morad Neman